1  Christian Contreras, Esq., (SBN 330269)
2  **LAW OFFICES OF CHRISTIAN CONTRERAS**
   **PROFESSIONAL LAW CORPORATION**
3  360 E. 2nd St., 8th Floor
   Los Angeles, California 90012
4  Tel: (323) 435-8000; Fax: (323) 597-0101
   Email:CC@Contreras-Law.com
5
6  Sam Harton, *Pro Hac Vice forthcoming*
   Romanucci and Blandin, LLC
7  321 N. Clark Street, Suite 900
   Chicago, IL 60654
8  Tel: 312-253-8632Fax: 312-458-1004
   Email: sharton@rblaw.net
9
10 Attorneys for Plaintiffs, ANTHONY WRIGHT, *et al*.

11 ## UNITED STATES DISTRICT COURT

12 ## FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 | ANTHONY WRIGHT, individually; | **CASE NO.: 5:25-cv-917** |
14 | NICOYA WRIGHT, individually; | |
   | L.W., H.W., and A.G., individually by | **COMPLAINT FOR DAMAGES** |
15 | and through their Guardian Ad Litem | |
   | NICOYA WRIGHT; | 1. Excessive Force, Fourteenth |
16 | | Amendment Violation (42 USC § 1983); |
17 | Plaintiffs, | 2. Unconstitutional Conditions of |
   | | Confinement/Medical Care, Fourteenth |
18 | v. | Amendment Violation (42 USC § 1983); |
19 | SAN BERNARDINO COUNTY | 3. Failure to Protect from Harm, |
   | SHERIFF's DEPARTMENT, a public | Fourteenth Amendment Violation (42 |
20 | entity; SAN BERNARDINO | USC § 1983; |
   | COUNTY, a public entity; SHANNON | 4. Failure to Intervene, Fourteenth |
21 | DICUS, individually; JAMES | Amendment Violation (42 USC § 1983; |
   | WILLIAMS, individually; and DOES | 5. Interference with Parent/Child |
22 | 1-10, individually, | Relationship, Fourteenth Amendment |
   | | Violation (42 USC § 1983); |
23 | Defendants. | 6. Supervisory Liability – (42 USC § 1983; |
24 | | 7. Municipal Liability – (42 USC § 1983); |
25 | | 8. Negligence; |
   | | 9. Violation of Civil Code § 52.1 (Bane |
26 | | Act Violation); |
   | | 10. Violation of Government Code § 845.6 |
27

28                              **DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.   This is a civil rights action seeking monetary damages against Defendants SAN BERNARDINO COUNTY, SAN BERNARDINO COUNTY SHERIFF's DEPARTMENT (hereinafter also "SBCSD"), SHANNON DICUS, JAMES WILLIAMS, and DOES 1-10, collectively referred to as Defendants, stemming from negligence that led to the paralyzation of ANTHONY WRIGHT.

2.   On April 25, 2023, ANTHONY WRIGHT, a pretrial detainee at Glen Helen Rehabilitation Center (hereinafter "GHRC") (shown below), was forced along with 80 others to stand outside in the scorching sun without water or shade—far beyond the facility's capacity and in clear violation of policy. Detainees begged officers to be let inside, visibly suffering from the heat, but were ignored.



3.   ANTHONY WRIGHT collapsed from dehydration and heat exhaustion. When he regained consciousness near a toilet, fellow inmates pleaded for medical help, but no staff responded. Instead, a deputy violently yanked ANTHONY WRIGHT up by the wrists, slamming his head into the toilet, fracturing his neck, and causing him to be permanently paralyzed from the neck down. He was eventually taken to a county hospital where, after expressing hesitation about emergency surgery, he was sedated

1  against his will and operated on. ANTHONY WRIGHT's life is now shattered by

2  neglect, cruelty, and the complete abandonment of human decency.

3      4.     The conduct of Defendants was reckless, inhumane, and in clear violation

4  of basic rights, demonstrating deliberate indifference to the suffering of those in their

5  care. Their actions, or willful inaction, directly resulted in unnecessary harm, suffering,

6  and permanent injury, making them fully accountable for the consequences that

7  followed.

8      5.     Accordingly, this Complaint seeks judicial redress and monetary damages

9  for such constitutional violations.

10                  **JURISDICTION AND VENUE**

11     6.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the

12  Fourth and Fourteenth Amendments to the United States Constitution, and the laws and

13  Constitution of the State of California. Jurisdiction is conferred upon this Court by 28

14  U.S.C. §§ 1331 and 1343.

15     7.     Venue is proper within the Central District of California pursuant to 28

16  U.S.C. § 1391(b)(2) because the events and omissions giving rise to Plaintiffs' claims

17  occurred within this district.

18     8.     With respect to Plaintiffs' state law claims, Plaintiffs have complied with

19  the California Tort Claims Act ("CRCA"). Therefore, "[a] dispute over when a claim

20  accrued is a question of whether the claimant has complied with the CTCA and is

21  within a federal court's jurisdiction." *Ovando v. City of Los Angeles*, 92 F. Supp. 2d

22  1011, 1022 (C.D. Cal. 2000). Plaintiffs have complied with the Tort Claims Act

23  because of the delayed discovery doctrine and equitable estoppel. Given that

24  ANTHONY WRIGHT is physically incapacitated due to his injury, both discovery

25  doctrine and equitable estoppel apply.

26                          **PARTIES**

27     9.     Plaintiff ANTHONY WRIGHT is and was, at all times relevant hereto, a

28  resident of San Bernardino County.

---

3

**COMPLAINT FOR DAMAGES**

10.   Plaintiff NICOYA WRIGHT, is and was, at all times relevant hereto, a resident of San Bernardino County.

11.   Plaintiff L.W., a minor, is and was, at all times relevant hereto, a resident of Southern California.

12.   Plaintiff A.G. a minor, is and was, at all times relevant hereto, a resident of Southern California.

13.   Plaintiff H.W. a minor, is and was, at all times relevant hereto, a resident of Southern California.

14.   Defendant SAN BERNARDINO COUNTY (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant SAN BERNARDINO COUNTY SHERIFF's DEPARTMENT (hereinafter also "SBCSD"), also a separate public entity, which employs other DOE Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including SBCSD employees, complied with the laws and the Constitutions of the United States and of the State of California. Defendant COUNTY, through SBCSD, is and was responsible for ensuring the protection and safety of all persons incarcerated at the SBCSD correctional facilities and detention centers, including GHRC.

15.   At all relevant times, Defendant CAPTAIN JAMES WILLIAMS was an employee of the COUNTY by and through GHRC. At all relevant times, Defendant CAPTAIN JAMES WILLIAMS was acting under color of law. Defendant CAPTAIN JAMES WILLIAMS is being sued in his individual capacity.

16.   At all relevant times, Defendant SHERIFF SHANNON DICUS was an employee of the COUNTY by and through GHRC. At all relevant times, Defendant SHERIFF SHANNON DICUS was acting under color of law. Defendant SHERIFF SHANNON DICUS is being sued in his individual capacity.

///

4

**COMPLAINT FOR DAMAGES**

17.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1-10 and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to add the names and capacities of each DOE Defendant when they have been ascertained.

18.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1-10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1-10 include individual law enforcement personnel employed by the COUNTY and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend their complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1-10 were and still are residents of the State of California and the COUNTY. DOES 1-10 are sued in their individual capacities.

19.     Each of the defendants, including DOES 1-10, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

///

**COMPLAINT FOR DAMAGES**

20.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

21.     Plaintiffs are informed, believe, and thereupon allege that, at all time relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

22.     In doing each of the acts and/ or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

23.     In doing each of the acts and/ or omissions alleged herein, Defendants, and each of them, acted under color of authority and/ or under the color of law.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

24.     On April 25, 2023, ANTHONY WRIGHT, a pretrial detainee—not yet convicted of any crime—was incarcerated at the Glen Helen Rehabilitation Center (GHRC) in San Bernardino County. That afternoon, he and approximately 80 other detainees were forced into the scorching outdoor yard while deputies conducted a facility search. Despite the blistering heat and San Bernardino's dry, arid climate, the detainees were given no access to drinking water or shade.

25.     They stood on baking concrete, exposed entirely to the sun. The only available water source was a filthy, bird-feces-covered metal fountain that offered only hot water. Detainees, visibly suffering, tried to shield themselves with towels and pleaded with the deputies, begging to be let back inside. Their cries were ignored.

Deputies, including DOES 1-10, not only refused them entry but ordered them away from what little shade existed. Then, sometime after 1:00 P.M., ANTHONY WRIGHT collapsed from heat and dehydration. He lay unconscious on the ground, near a toilet, his head eventually ending up beneath the seat. When he awoke, he was disoriented but aware enough to hear fellow inmates pleading for help, urging the deputies to call medical personnel. No one came. The authorities stood by and did nothing.

26.    As ANTHONY WRIGHT lay flat on his back, DOES 1-10 approached. Without a word of care or caution, this deputy straddled ANTHONY WRIGHT and violently yanked him up by the wrists, slamming his head into the metal toilet. The force snapped his neck back, sending a searing pain down his spine. In that brutal moment, ANTHONY WRIGHT's life changed forever. ANTHONY WRIGHT sustained fractures to multiple vertebrae in his neck and a hematoma on his forehead. After that use of force, he could no longer move. He was paralyzed from the neck down—a young man rendered immobile by a system that failed him at every step. Eventually, emergency services arrived and took ANTHONY WRIGHT to Arrowhead Regional Medical Center, operated by the very county responsible for his injuries.

27.    Upon evaluation, he was told he needed emergency surgery. ANTHONY WRIGHT, scared and overwhelmed, asked for time to think. But that choice was taken from him. Without his consent, medical staff forcibly sedated him and proceeded with the surgery. Today, he lives with the consequences of that day: not just the permanent paralysis, but the knowledge that his suffering was avoidable, and that his cries—like so many others—were met with silence.

## FIRST CLAIM FOR RELIEF

### Excessive Force, Fourteenth Amendment Violation

### (42 U.S.C. § 1983)

### (By Plaintiff ANTHONY WRIGHT as Against Defendants DOES 1-10)

28.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

29.     The Fourteenth Amendment applies to excessive force claims brought by pretrial detainees. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Specifically, the Supreme Court has held that "[i]t is clear … that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* In *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015), the Supreme Court held that to prove an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the officers' use of force was "objectively" unreasonable; the detainee is not required to show that the officers were "subjectively" aware that their use of force was unreasonable.

30.     Plaintiff alleges that DOES 1-10, inclusive, used excessive force against ANTHONY WRIGHT which deprived ANTHONY WRIGHT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to ANTHONY WRIGHT under the Fourteenth Amendment to the United States Constitution and applied to State actors by the Fourteenth Amendment.

31.     The Fourteenth Amendment requires force to be objectively reasonable. However, the force used on ANTHONY WRIGHT was fundamentally unreasonable and in violation of ANTHONY WRIGHT's Fourteenth Amendment right to be secure in his person against an unreasonable searches and seizures.

32.     Indeed, on April 25, 2023, some time after 12:00 P.M., DOES 1-10, inclusive, acting in their individual and/or representative capacities, in the course and scope of their employment with GHRC, acting under color of law, used unreasonable and excessive force and violated the constitutional rights of ANTHONY WRIGHT when they grabbed ANTHONY WRIGHT by both wrists and aggressively jerked him forward, causing him to hit his forehead on a metal toilet. The force snapped his neck back, sending a searing pain down his spine, fracturing multiple verterbrae. DOES 1-10, inclusive, unnecessarily apprehended ANTHONY WRIGHT by force which resulted in ANTHONY WRIGHT's injuries and ultimate paralyzation.

///

33.    When DOES 1-10, inclusive, used force on ANTHONY WRIGHT, ANTHONY WRIGHT did not present a threat to the deputies.

34.    Inn fact, ANTHONY WRIGHT was unconscious and lying on the floor after having fainted from the heat.

35.    Therefore, the force used by Defendants DOES 1-10, inclusive, was objectively unreasonable and therefore in violation of the Fourteenth Amendment.

36.    DOES 1-10, inclusive, caused serious injuries to ANTHONY WRIGHT, that led to his permanent paralyzartion. By virtue of their misconduct, DOES 1-10, inclusive, are liable for ANTHONY WRIGHT's tragic death, either because these Defendants were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations. Accordingly, DOES 1-10, inclusive, are liable for all damages recoverable under 42 U.S.C. Section 1983.

37.    Plaintiff ANTHONY WRIGHT by this action, further claims all of Plaintiff's attorneys' fees and costs incurred and to be incurred in Plaintiff's presenting, maintaining and prosecuting this action under 42 U.S.C. Section 1988.

38.    The conduct of DOES 1-10, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of ANTHONY WRIGHT and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-10, inclusive.

## SECOND CLAIM FOR RELIEF

**Unconstitutional Conditions of Confinement/Medical Care, Fourteenth Amendment Violation**

**(42 U.S.C. § 1983)**

**(By Plaintiff ANTHONY WRIGHT's Against DOES 1-10)**

39.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

40.    "In light of the Supreme Court's rulings that conditions of confinement violate pretrial detainees' Fourteenth Amendment rights if the conditions amount to

punishment, and that failure to prevent harm amounts to punishment where detention officials are deliberately indifferent, we have concluded that the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010), overruled on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

41.    At all relevant times, Plaintiff ANTHONY WRIGHT was a pretrial detainee entitled to protection under the Fourteenth Amendment to the United States Constitution. Defendants DOES 1-10 were acting under color of state law and in the scope of their employment with the SBCSD when the constitutional violations described herein occurred.

42.    On April 25, 2023, Defendants made an intentional decision to deprive ANTHONY WRIGHT of safe conditions of confinement, in the following ways:

A. Placed ANTHONY WRIGHT outside in the scorching sun without water or shade—far beyond the facility's capacity and in clear violation of policy;

B. Placed ANTHONY WRIGHT in a condition after he was injured which exacerbated his injury;

C. Placed ANTHONY WRIGHT in a condition where Defendants failed to adequately monitor ANTHONY WRIGHT's medical condition despite visible signs of medical distress;

D. Placed ANTHONY WRIGHT in a condition where Defendants failed to summon or provide prompt medical care after ANTHONY WRIGHT collapsed;

E. Placed ANTHONY WRIGHT in a condition where Defendants failed to adequately provide ANTHONY WRIGHT with proper care after he suffered a heat stroke and instead using excessive force and causing further injury, resulting in an eventual paralysis.

///

**COMPLAINT FOR DAMAGES**

43.     As a result of Defendants' conduct, Plaintiff ANTHONY WRIGHT was placed at substantial risk of serious harm, including heat stroke, traumatic brain injury, spinal cord injury, and permanent disability.

44.     Defendants failed to take reasonable available measures to abate or reduce this risk of harm, despite the fact that a reasonable officer in the same situation would have recognized the obvious and substantial danger posed to ANTHONY WRIGHT's health.

45.     Under the objective deliberate indifference standard established in *Alexander v. Nguyen*, 78 F.4th 1140, 1144 (9th Cir. 2023), a pretrial detainee asserting a Fourteenth Amendment claim must show more than negligence, but less than subjective intent—something akin to reckless disregard. Here, Defendants' failure to act rises well above mere negligence and demonstrates a reckless disregard for ANTHONY WRIGHT's constitutional rights.

46.     Upon information and belief, on April 25, 2023, after it was clear that ANTHONY WRIGHT needed medical care, DOES 1-10, inclusive, failed to summon or provide immediate medical assistance. Despite clear indications that ANTHONY WRIGHT was suffering from a medical emergency—namely, signs consistent with heat stroke—Defendants failed to act. Upon information and belief, numerous other detainees at the scene were reportedly screaming for help on ANTHONY WRIGHT's behalf, further alerting Defendants to the severity of ANTHONY WRIGHT's condition. Nevertheless, Defendants ignored or disregarded these pleas and failed to intervene in a timely manner, thereby exacerbating ANTHONY WRIGHT's injuries and violating his constitutional rights under the Fourteenth Amendment.

47.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff ANTHONY WRIGHT suffered extreme and permanent injuries, including paralysis, pain and suffering, emotional distress, and loss of enjoyment of life.

///

///

48.    Plaintiff ANTHONY WRIGHT by this action, further claims all of Plaintiff's attorneys' fees and costs incurred and to be incurred in Plaintiff presenting, maintaining and prosecuting this action under 42 U.S.C. Section 1988.

## THIRD CLAIM FOR RELIEF

### Failure to Protect from Harm,

### Violation of the Fourteenth Amendment to the United States Constitution

### ( 42 U.S.C. § 1983)

### (By Plaintiff ANTHONY WRIGHT As Against DOES 1-10)

49.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

50.    Pretrial detainees such as ANTHONY WRIGHT have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

51.    Upon information and belief, Defendants DOES 1-10, intentionally placed ANTHONY WRIGHT in a condition where he would be unreasonably exposed to the risk of harm which could result of in death or serious bodily injury. Particularly, Defendants DOES 1-10 placed ANTHONY WRIGHT outside in the heat and also did not properly stabilize him after he was subjected to excessive force. Defendants DOES 1-10 could have mitigated the risks of harm by not moving ANTHONY WRIGHT given that he suffered a catastrophic spinal injury. However, Defendants DOES 1-10 were objectively deliberately indifferent and failed to protect ANTHONY WRIGHT from harm.

52.    Furthermore, upon information and belief, Defendants DOES 1-10 intentionally chose to disregard this known risk by failing to implement appropriate safeguards, failing to intervene when ANTHONY WRIGHT was in clear medical distress, and by engaging in unnecessary and excessive force, all of which directly contributed to ANTHONY WRIGHT's injuries. Each Defendant could have taken

1  action to prevent unnecessary harm to ANTHONY WRIGHT but refused or failed to

2  do so.

3      53.    Defendants DOES 1-10 were on notice that their conduct as well as their

4  deficient policies, procedures, and practices alleged herein created a substantial risk of

5  serious harm to an inmate in ANTHONY WRIGHT's position. By policy, procedure,

6  and practice Defendants DOES 1-10 deliberately disregarded the hazards and risks

7  posed to persons incarcerated/detained at the SAN BERNARDINO COUNTY's

8  GHRC, as alleged above. Defendants failed to take any reasonable steps to mitigate the

9  obvious and well-known risks of harm that their actions and omissions posed to

10  ANTHONY WRIGHT, including dangers of exposing incarcerated or detained

11  individuals to extreme heat, failing to timely request or provide medical intervention,

12  and physically mishandling an individual in medical distress in a manner that

13  foreseeably resulted in severe injury.

14      54.    Defendants DOES 1-10's failure to properly monitor

15  incarcerated/detained persons, provide adequate medical care, monitor ANTHONY

16  WRIGHT's condition, and handle him with appropriate caution when he was clearly

17  incapacitated demonstrates deliberate indifference to his serious medical needs. Their

18  conduct was not only unreasonable under the circumstances but also violated clearly

19  established constitutional protections guaranteed to incarcerated individuals under the

20  Fourteenth Amendment.

21      55.    Upon information and belief, Defendants SHERIFF SHANNON DICUS

22  and DOES 6-10 ratified Defendants DOES 1-5's failure to provide adequate care,

23  intervene to prevent harm, and adhere to constitutional and departmental standards by

24  approving, condoning, or deliberately ignoring their conduct after the fact, thereby

25  fostering a culture of impunity and deliberate indifference within the department.

26      56.    As a direct and proximate result of Defendants' conduct, the civil rights

27  of ANTHONY WRIGHT, as protected by the Fourteenth Amendment of the United

28  States Constitution were violated. Further, ANTHONY WRIGHT experienced

1  physical pain, severe emotional distress, and mental anguish, as well as loss of his life

2  and other damages alleged herein.

3      57.    Defendants subjected ANTHONY WRIGHT to their wrongful conduct,

4  depriving ANTHONY WRIGHT of rights described herein, knowingly, maliciously,

5  and with conscious and reckless disregard for whether the rights and safety of

6  ANTHONY WRIGHT and others would be violated by their acts and/or omissions.

7      58.    As a direct and proximate result of Defendants' acts and/or omissions as

8  set forth above, ANTHONY WRIGHT, through Plaintiffs herein, sustained injuries

9  and damages.

10     59.    The conduct of Defendants entitles Plaintiff to punitive damages and

11  penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff do not

12  seek punitive damages against Defendants COUNTY.

13     60.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

14  U.S.C. § 1988, and other applicable United States and California codes and laws.

### FOURTH CLAIM FOR RELIEF

**Failure to Intervene,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**( 42 U.S.C. § 1983)**

**(By Plaintiff ANTHONY WRIGHT As Against DOES 1-10)**

20     61.    Plaintiff realleges and incorporates herein by reference each of the

21  preceding paragraphs of this complaint, and any subsequent paragraphs.

22     62.    At all relevant times, Defendants DOES 1-10 were acting under color of

23  state law and within the course and scope of their employment as law enforcement

24  officers, correctional staff, or agents of the COUNTY.

25     63.    Plaintiff ANTHONY WRIGHT was a pretrial detainee at the time of the

26  events alleged and therefore was entitled to protection under the Fourteenth

27  Amendment to the United States Constitution.

28  ///

**COMPLAINT FOR DAMAGES**

64.    Defendants DOES 1-10 observed or were otherwise aware that ANTHONY WRIGHT was being subjected to excessive force, unconstitutional conditions of confinement and/or denied adequate medical care, including being left in excessive heat and not receiving timely medical intervention despite clear signs of medical distress.

65.    Defendants DOES 1-10 had both the opportunity and the duty to intervene to prevent the constitutional violations being committed by their fellow officers, but they failed to do so.

66.    A reasonable officer in the same or similar circumstances would have known that failing to act in the face of obvious and serious medical needs, including the effects of heat stroke and prolonged medical inattention, would violate ANTHONY WRIGHT's clearly established constitutional rights.

67.    The failure of Defendants DOES 1-10 to intervene and prevent the violation of Plaintiff's constitutional rights directly and proximately caused ANTHONY WRIGHT's serious injuries, including but not limited to paralysis and other permanent medical impairments.

68.    As a result of Defendants' actions and omissions, Plaintiff ANTHONY WRIGHT has suffered, and continues to suffer, substantial damages, including physical pain, emotional distress, loss of bodily function, and the costs of medical care and treatment.

69.    Defendants' failure to intervene constitutes a violation of Plaintiff's rights under the Fourteenth Amendment and entitles Plaintiff to compensatory and punitive damages pursuant to 42 U.S.C. § 1983.

**FIFTH CLAIM FOR RELIEF**

**Interference with Parent/Child Relationship, Fourteenth Amendment Violation**

**(42 U.S.C. § 1983)**

**(By Plaintiffs NICOYA WRIGHT, L.W., a minor, A.G., a minor, H.W., a minor, As Against Defendants DOES 1-10)**

70.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

71.    The aforementioned acts and/or omissions of Defendants DOES 1-10, inclusive, including placing ANTHONY WRIGHT in clear harm's way, deprived Plaintiff NICOYA WRIGHT of a relationship with her husband, ANTHONY WRIGHT and deprived L.W., A.G. and H.W. of a relationship with their father, ANTHONY WRIGHT.

72.    Parents and children possess a constitutionally protected liberty interest in companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). This liberty interest is rooted in the Fourteenth Amendment, which states in relevant part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

73.    At all relevant times, Defendants DOES 1-10 were acting under color of law.

74.    The acts and omissions of Defendants DOES 1-10 were conduct which shocks the conscience done with a purpose to harm or in deliberate indifference to ANTHONY WRIGHT's life, protection, and constitutional rights.

75.    The acts and/or omissions of Defendants DOES 1-10, including their unconstitutional use of excessive force and unconstitutional conditions of confinement, violated Plaintiffs' NICOYA WRIGHT's, L.W., A.G., and H.W.'s liberty interests in the familial relationship and violated Plaintiffs' NICOYA WRIGHT's, L.W., A.G., and H.W.'s substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

76.    Indeed, the acts and omissions of Defendants DOES 1-10, deprived Plaintiffs NICOYA WRIGHT, L.W., A.G., and H.W. of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs

NICOYA WRIGHT, L.W., A.G., and H.W. of their rights to a familial relationship with ANTHONY WRIGHT without due process of law by their deliberate indifference in causing substantial harm to ANTHONY WRIGHT through Defendants' acts and omissions.

77.     In engaging in conduct that shocks the conscience, Defendants DOES 1-10, acted with a purpose to harm, unrelated to any legitimate law enforcement objective when they left ANTHONY WRIGHT outside in extreme heat without access to drinkable water, without supervision or care, failed to promptly respond to his medical emergency, and violently jerked him in a manner that caused him to strike his head on a metal toilet, resulting in catastrophic injuries.

78.     Accordingly, the conduct of Defendants DOES 1-10 shocks the conscience and has unconstitutionally interfered with the familial association between Plaintiffs and ANTHONY WRIGHT in violation of the Fourteenth Amendment. As a result of Defendants conduct, NICOYA WRIGHT, L.W., A.G., and H.W.have been deprives of the familial association, companionship of ANTHONY WRIGHT.

79.     As a direct and proximate result of Defendants DOES 1-10's acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages and are entitled to damages under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

80.     Furthermore, Defendants DOES 1-10 subjected ANTHONY WRIGHT to his wrongful conduct, depriving him of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of ANTHONY WRIGHT and others would be violated by their acts and/or omissions. The conduct of Defendants DOES 1-10 entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against the public entity Defendants.

81.     Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States laws.

///

**SIXTH CLAIM FOR RELIEF**

**Supervisory Liability**

**(42 U.S.C. § 1983)**

**(By Plaintiff ANTHONY WRIGHT As Against Defendants SHANNON DICUS, JAMES WILLIAMS, and DOES 6-10)**

82.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

83.    At all material times, JAMES WILLIAMS, SHERIFF DICUS, and DOES 6-10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and SBSD.

84.    Defendants JAMES WILLIAMS, SHERIFF DICUS, and DOES 6-10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1-5, and other COUNTY and SBSD personnel, with deliberate indifference to Plaintiffs' and others' constitutional rights, which were thereby violated as described above.

85.    As supervisors, Defendants JAMES WILLIAMS, SHERIFF DICUS, and DOES 6-10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at SAN BERNARDINO COUNTY GHRC and the rights to the serious medical needs of ANTHONY WRIGHT.

86.    Supervising Defendants either directed his or her subordinates in conduct that violated ANTHONY WRIGHT's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive ANTHONY WRIGHT of rights, or knew his or her subordinates were engaging in acts likely to deprive ANTHONY WRIGHT of rights

1   and failed to act to prevent his or her subordinate from engaging in such conduct, or

2   disregarded the consequence of a known or obvious training deficiency that he or she

3   must have known would cause subordinates to violate ANTHONY WRIGHT's rights,

4   and in fact did cause the violation of ANTHONY WRIGHT's rights. (*See*, Ninth

5   Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising

6   Defendants is liable in their failures to intervene in their subordinates' apparent

7   violations of ANTHONY WRIGHT' rights.

8         87.    The unconstitutional customs, policies, practices, and/or procedures of

9   Defendants COUNTY and SBSD, as stated herein, were directed, encouraged, allowed,

10  and/or ratified by policymaking officers for Defendants COUNTY and SBSD,

11  including Defendant JAMES WILLIAMS, SHANNON DICUS and DOES 6-10,

12  respectively, with deliberate indifference to Plaintiff ANTHONY WRIGHT's, and

13  others' constitutional rights, which were thereby violated as described above.

14        88.    The unconstitutional actions and/or omissions of Defendants DOES 1-10,

15  and other COUNTY and SBSD personnel, as described above, were approved,

16  tolerated, and/or ratified by policymaking officers for the COUNTY and SBSD,

17  including Defendants JAMES WILLIAMS, SHANNON DICUS and DOES 6-10.

18        89.    Plaintiff is informed and believes and thereon alleges that the details of

19  this incident have been revealed to Defendants JAMES WILLIAMS, SHANNON

20  DICUS and DOES 6-10 and that such Defendant-policymakers have direct knowledge

21  of the fact that the injuries of ANTHONY WRIGHT were not justified or necessary,

22  but represented deliberate indifference to his rights to be protected and safe while in

23  the COUNTY's custody and his rights to his serious medical and mental health needs,

24  as set forth above.

25        90.    Notwithstanding this knowledge, on information and belief, Defendants

26  JAMES WILLIAMS, SHANNON DICUS and DOES 6-10 have approved and ratified

27  the conduct and decisions of Defendants DOES 1-5 in this matter, and have made a

28  deliberate choice to endorse such conduct and decisions, and the basis for them, that

1   resulted in permanent catastrophic injuries to ANTHONY WRIGHT. By so doing,

2   Defendants JAMES WILLIAMS, SHANNON DICUS and DOES 6-10 have shown

3   affirmative agreement with the individual Defendants' actions and have ratified the

4   unconstitutional acts of the individual Defendants.

5       91.    Furthermore, Plaintiffs are informed and believe, and thereupon allege,

6   that Defendants JAMES WILLIAMS, SHANNON DICUS and DOES 6-10 other

7   policymaking officers for the COUNTY and SBSD were and are aware of a pattern of

8   misconduct and injury, and a code of silence, caused by COUNTY and SBSD custody,

9   medical and mental health staff personnel similar to the conduct of Defendants

10  described herein, but failed to discipline culpable law enforcement officers and

11  employees and failed to institute new procedures and policy within the COUNTY and

12  SBSD.

13      92.    The aforementioned customs, policies, practices, and procedures; the

14  failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

15  investigate, and discipline; and the unconstitutional orders, approvals, ratification, and

16  toleration of wrongful conduct of Defendants SHANNON DICUS, JAMES

17  WILLIAMS, and DOES 6-10 were a moving force and/or a proximate cause of the

18  deprivations of ANTHONY WRIGHT's clearly established and well-settled

19  constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

20      93.    Defendants subjected ANTHONY WRIGHT to their wrongful conduct,

21  depriving ANTHONY WRIGHT of rights described herein, knowingly, maliciously,

22  and with conscious and reckless disregard for whether the rights and ANTHONY

23  WRIGHT and others would be violated by their acts and/or omissions.

24      94.    As a direct and proximate result of the unconstitutional actions, omissions,

25  customs, policies, practices, and procedures of Defendants SHANNON DICUS,

26  JAMES WILLIAMS, and DOES 6-10 as described above, Plaintiff sustained serious

27  and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

28  ///

### SEVENTH CLAIM FOR RELIEF

**Municipal Liability - *Monell***

**(42 U.S.C. § 1983)**

**(By Plaintiff ANTHONY WRIGHT Against Defendant COUNTY)**

95.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

96.    In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[1]

97.    As set forth in the forgoing claims for relief, Defendants DOES 1-10 committed clear and well-established violations of constitutional rights against ANTHONY WRIGHT within the course and scope of their employment as COUNTY employees, under color of law.

98.    On and for some time prior to April 25, 2023, (and continuing to the present date), Defendants COUNTY, SBCSD, and DOES 1-10, acting with deliberate indifference to the rights and liberties of the public in general, and of ANTHONY WRIGHT, and of persons in his class situation and comparable position in particular, knowingly maintained, enforced and applied officially recognized customs, policies, and practices in violation of person's constitutional rights.

99.    The unconstitutional actions and/or omissions of Defendants DOES 1-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and SBCSD, on information and belief, were pursuant to the

---

[1] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

following customs, policies, practices, and/or procedures of Defendants COUNTY and SBCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and SBCSD:

a.  The custom and practice of deputies to using excessive force on inmates;

b.  The custom and practice of deputies not stabilizing inmates after suffering a serious injury;

c.  The custom and practice of deputies of not properly medically treating inmates who suffer serious injuries;

d.  The custom and practice of deputies of allowing and encouraging inadequate and incompetent medical care for jail inmates and arrestees;

e.  The custom and practice of deputies of hiring, retaining and contracting for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

f.  The custom and practice of deputies of denying pretrial detainees their constitutional rights, by subjecting them to dangerous and inhumane conditions, such as locking detainees out in extreme heat during dormitory searches;

g.  The custom and practice of deputies of allowing, encouraging, and requiring unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

h.  The custom and practice of deputies of allowing and failing to rectify a pattern of conduct in which deputies routinely failed to recognize and appropriately respond to serious medical emergencies, thereby denying detainees the medical care they were constitutionally entitled to, including

failing to address medical distress promptly, often responding with force rather than medical intervention;

i.  The custom and practice of deputies of establishing, maintaining, and enforcing policies, practices, and customs that exhibited deliberate indifference to the safety and well-being of detainees, as evidenced by the continued use of unsafe practices and failure to train officers in responding to medical emergencies or to avoid unnecessary and excessive force;

j.  The custom and practice of deputies of ignoring or inadequately responding to clear signs of medical distress or emergencies, leading to a foreseeable risk of injury and death among detainees, despite knowledge of previous incidents involving detainee fatalities caused by similar conditions;

k.  The custom and practice of deputies of perpetuating a culture of inadequate training and supervision of deputies, resulting in numerous constitutional violations and exposing detainees to unnecessary harm, including the failure to take appropriate action when detainees displayed signs of overheating, medical distress, or injury.

l.  The custom and practice of deputies of covering up violations of constitutional rights by any or all of the following:

m. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

n.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

o.  The custom and practice of deputies of allowing, tolerating, and/or encouraging a "code of silence" among law enforcement officers, SBCSD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the SBCSD or medical staff does not provide

adverse information against a fellow officer, or member of the SBCSD or the medical staff;

p.  The custom and practice of deputies of failing to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as ANTHONY WRIGHT, and in the face of an obvious need for such policies, procedures, and training programs.

100.   The unconstitutional actions and/or omissions of Defendants DOES 1-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and SBCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and SBCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and SBCSD.

101.   Defendant supervisors had knowledge of inadequacy of Supervision and deliberate indifference towards inmates' rights to be protected from harm at the GHRC and failed to take corrective action.

102.   Prior to ANTHONY WRIGHT's serious injuries, high-level COUNTY supervisors, knew or should have known of a history of years of notice of ongoing violence the GHRC and the ongoing failure to routinely check in on inmates, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate.

103.   The unconstitutional actions and/or omissions of Defendants DOES 1-10 COUNTY and SBCSD employees, as described above, were approved, tolerated, and/or ratified by policymaking officers for the SBCSD and COUNTY, including DOES 6-10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY

and SBCSD, and that such policymakers have direct knowledge of the fact that the serious injures of ANTHONY WRIGHT were the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY and SBCSD, and his rights to have access to medical care when suffering a medical emergency. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and SBCSD have approved of the conduct and decisions of Defendants DOES 1-5 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the serious bodily injuries of ANTHONY WRIGHT.

104. By so doing, the authorized policymakers within the COUNTY and SBCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendants COUNTY and SBCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and SBCSD.

105. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and SBCSD were a moving force and/or a proximate cause of the deprivations of ANTHONY WRIGHT's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983.

106. In terms of frequency, duration and consistency, the following in-custody injuries which occurred within SBSD jails demonstrate a custom and practice within SBSD and COUNTY:

A. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF COREY BENNETT:** On December 2, 2023, Corey Bennet had a medical

emergency stemming from a methamphetamine overdose while a detainee at the High Desert Detention Center. The medical emergency of Corey Bennet was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT  and the prior instance show a custom and practice of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

B. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF RICKEY WHIPPLE:** On October 6, 2023, Rickey Whipple had a medical emergency stemming from Fentanyl toxicity. Rickey Whipple  was a detainee at the West Valley Detention Center when he was found unresponsive. The medical emergency of Rickey Whipple was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT  and the prior instance show a custom and practice of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

C. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF STEPHEN HERNANDEZ:** On October 24, 2022, Stephen Hernandez was found unresponsive in his cell while a detainee at the West Valley Detention Center. Stephen Hernandez had a medical emergency stemming from acute Fentanyl toxicity. The medical emergency of Stephen Hernandez was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to

medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT and the prior instance show a custom and practice of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

D. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF GUADALUPE GONZALEZ:** On July 9, 2022, Guadalupe Gonzalez's had a medical emergency stemming from acute ethanol intoxication while detained at the West Valley Detention Center. Mr. Gonzalez had a history of medical problems. The medical emergency of Guadalupe Gonzalez was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT and the prior instance show a custom and practice of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

E. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF MARCUS HAWES:** On April 29, 2022, Marcus Hawes had a medical emergency stemming from Fentanyl intoxication while in custody at the West Valley Detention Center. Marcus Hawes was found unresponsive in his cell and was detained at the West Valley Detention Center for a significant period of time. The medical emergency of Marcus Hawes was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT and the prior instance show a custom and practice

27

**COMPLAINT FOR DAMAGES**

of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

F. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF FRANCISCO RAMIREZ:** On March 24, 2022, Francisco Ramirez had a medical emergency stemming frim Fentanyl intoxication while in custody at the High Desert Detention Center. Mr. Ramirez had been detained in San Bernardino County Sheriff's Department since April of 2021. The medical emergency of Francisco Ramirez was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT and the prior instance show a custom and practice of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

G. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF BERNARD RAYFORD:** On August 8, 2021, Bernard Rayford had a medical medical emergency from sudden cardiac arrest due to phencyclidine ("PCP") while under the custody of San Bernardino County Sheriff's Department deputies. The medical emergency of Bernard Rayford was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT and the prior instance show a custom and practice of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

**COMPLAINT FOR DAMAGES**

H. **IN-CUSTODY INJURY AND ULTIMATE DEATH OF MARK BARELA:** On July 28, 2021, Mark Barela had a medical emergency stemming from Fentanyl and methamphetamine intoxication while detained at the West Valley Detention Center. The medical emergency of Mark Barela was unconstitutional insofar that it was caused by San Bernardino County Sheriff's Department and County's deliberate indifference to his right to medical care and to be free from harm. This incident similar to the incident with ANTHONY WRIGHT because they occurred in similar circumstances whereby ANTHONY WRIGHT and the prior instance show a custom and practice of inmates not being protected from harm that was frequent, consistent and in place for significant duration.

107.   Approximately one year before the incident subject to this complaint, another detainee at the Glen Helen Rehabilitation Center had fallen unconscious on the Yard due to dehydration and/ or heat exhaustion, struck his head on the concrete, and died.

108.   Defendants subjected ANTHONY WRIGHT to their wrongful conduct, depriving ANTHONY WRIGHT of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of ANTHONY WRIGHT, Plaintiff and others would be violated by their acts and/or omissions.

109.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and SBCSD as described above, ANTHONY WRIGHT suffered serious injuries. Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and SBCSD.

///

///

### **EIGHTH CLAIM FOR RELIEF**

### **Negligence**

### **(By Plaintiff ANTHONY WRIGHT As Against All Defendants Save SBSD)**

110.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

111.  This action is brought pursuant to §§ 820 and 815.2 of the California Government Code. Under § 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, and each of them, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, Defendants SBCSD and COUNTY are vicariously liable for the acts and omissions of its employees committed within the course and scope of their employment.

112.  At all times, Defendants DOES 1-10, inclusive, owed Plaintiff ANTHONY WRIGHT the duty to act with due care in the execution and enforcement of any right, law, or legal obligation, and to ensure they are not exposed to death or serious bodily injury. Defendants, and each of them, owed these duties of care to ANTHONY WRIGHT WIRGHT by virtue of their law enforcement contact on April 25, 2023.

113.  On April 25, 2023, Defendants DOES 1-10 breached these duties in multiple respects, including but not limited to the following:

   A. Placed ANTHONY WRIGHT outside in the scorching sun without water or shade—far beyond the facility's capacity and in clear violation of policy;

   B. Placed ANTHONY WRIGHT in a condition after he was injured which exacerbated his injury;

   C. Placed ANTHONY WRIGHT in a condition where Defendants failed to adequately monitor ANTHONY WRIGHT's medical condition despite visible signs of medical distress;

**COMPLAINT FOR DAMAGES**

D. Placed ANTHONY WRIGHT in a condition where Defendants failed to summon or provide prompt medical care after ANTHONY WRIGHT collapsed;

E. Placed ANTHONY WRIGHT in a condition where Defendants failed to adequately provide ANTHONY WRIGHT with proper care after he suffered a heat stroke and instead using excessive force and causing further injury, resulting in an eventual paralysis.

114.   Defendants, through their acts and omissions, breached their duties is care and constitutional obligations owed to ANTHONY WRIGHT, including the duty to protect him from foreseeable harm, to provide adequate medical attention, and to refrain from using excessive force or exposing him to inhumane conditions, thereby proximately and foreseeably causing ANTHONY WRIGHT'S death catastrophic injuries.

115.   As a direct and proximate result of Defendants' breaches of duty, ANTHONY WRIGHT suffered significant medical injuries and experienced immense pain and suffering.

## NINTH CLAIM FOR RELIEF

### For Violation of the Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

### (By Plaintiff ANTHONY WRIGHT against all Defendants Save SBSD)

116.   Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

117.   The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820 as well as Cal. Civ. Code § 52.1. Under § 820, as a public employee, Defendants DOES 1-10, is liable for injuries caused by their acts or omissions to the same extent as a private person. Under § 815.2, the defendant public entity, SAN BERNARDINO COUNTY, are vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and

**COMPLAINT FOR DAMAGES**

scope of that employment, including Defendants DOES 1-10. This cause of action is not alleging direct liability against Defendant SAN BERNARDINO COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2 (a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal. 4th 1112, 1128.

118.    Additionally, Cal. Civ. Code § 52.1(b) authorizes a private right of action for damages by any person whose constitutional rights are violated by use of threats, intimidation, or coercion. Importantly, Section 52.1 serves as an analogous state-law basis for bringing excessive/unreasonable force claims as that provided under the Fourth Amendment to the United States Constitution. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105–6 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983.")); *Bender v. Cnty. of L.A.*, 217 Cal. App. 4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate, and excessive force—is [] within the protection of the Bane Act").

119.    As previously set forth, Defendants DOES 1-10, intentionally and unlawfully interfered with ANTHONY WRIGHT's exercise and enjoyment of his civil rights under the laws and Constitutions of the United States and California, including but not limited to the rights to be free from unreasonable excessive force (U.S. Const. amend. IV; and Cal. Const. Art. I § 13), the right to due process (U.S. Const. amend. XIV; and Cal. Const. Art. I § 7(a)), and the right to protection from undue restraint and/or harm to life, liberty, and property (Cal. Const. Art. I § 1).

120.    Defendants' conduct—abruptly jerking ANTHONY WRIGHT while he was medically vulnerable, causing him to strike his head on a metal toilet, and failing to provide medical aid—was both coercive and violent. It demonstrated an unlawful use of authority and was designed to punish, control, or dehumanize ANTHONY WRIGHT's, rather than protect or assist him. Due to the fact of ANTHONY WRIGHT's appearance, including his race as a Black man, Defendants were emboldened in their belief that they could act with impunity and disregard his rights.

**COMPLAINT FOR DAMAGES**

121.   From the moment Defendants DOES 1-10 first confronted ANTHONY WRIGHT, Defendants DOES 1-10 exhibited baseless hostility and a determined contempt for the life and wellbeing of ANTHONY WRIGHT. Defendants DOES 1-10's lack of reverence for the value of ANTHONY WRIGHT's life shows that Defendants DOES 1-10 specifically intended to violate ANTHONY WRIGHT's rights.

122.   The threats, intimidation, and coercive actions by Defendants DOES 1-10 were a substantial factor in causing ANTHONY WRIGHT's injuries and subsequent death. These actions constituted a violation of the Bane Act, Cal. Civ. Code § 52.1, and caused ANTHONY WRIGHT to suffer damages including pain and suffering, emotional distress, and physical injuries that resulted in his permanent paralyzation.

123.   Clearly, Defendants DOES 1-10 acted with the specific intent to interfere, or attempt to interfere, with ANTHONY WRIGHT's right to be free from unreasonable seizures through threats, intimidation, and coercion. Their actions were not the result of negligence or mistake, but instead reflected a deliberate and conscious choice to use coercive and violent conduct against ANTHONY WRIGHT, despite his vulnerable condition and clear need for medical attention.

124.   This specific intent is evidenced by Defendants' decision to physically mishandle ANTHONY WRIGHT in a manner that caused him to strike his head on a metal toilet, after having already exhibited signs of serious medical distress. Rather than rendering aid, Defendants exploited his weakened state and appearance to justify force, knowing such conduct was unlawful.

125.   Therefore, as a direct and proximate result of Defendants DOES 1-10's conduct, ANTHONY WRIGHT suffered severe and catastrophic injuries that ultimately left him paralyzed, drastically altering his life forever and causing him immense mental, physical, and emotional distress and anguish for which he is entitled to compensation.

126.   Furthermore, as set forth herein, Defendants DOES 1-10 acted with willful and conscious disregard for the rights and wellbeing of ANTHONY WRIGHT, thereby

**COMPLAINT FOR DAMAGES**

1  subjecting him to cruel and unjust hardship. Accordingly, the actions and omissions of

2  Defendants DOES 1-10 were malicious and oppressive under the meaning of Cal. Civ.

3  Code § 3294, entitling Plaintiff to recover punitive as well as compensatory damages

4  in order to deter future misconduct by the example of Defendants' punishment.

5       127.   Finally, Plaintiff is also entitled to a multiplier of damages, a civil penalty

6  of $25,000 and the reasonable value of attorneys' fees and costs, as authorized under

7  Cal. Civ. Code § 52.

8  **TENTH CLAIM FOR RELIEF**

9  **Violation of California Government Code § 845.6**

10  **(By Plaintiff ANTHONY WRIGHT against all Defendants Save SBSD)**

11       128.   Plaintiff realleges and incorporates by reference each of the forgoing

12  paragraphs of this Complaint with the same force and effect as if fully set forth herein.

13       129.   This action is brought pursuant to §§ 820 and 815.2 of the California

14  Government Code as well as § 845.6. Under § 820 of the Government Code, as public

15  employees, Defendants DOES 1-10, inclusive, and each of them, are liable for injuries

16  caused by their acts or omissions to the same extent as private persons. Under § 815.2

17  of the Government Code, Defendants SBCSD and COUNTY are vicariously liable for

18  the acts and omissions of its employees committed within the course and scope of their

19  employment.

20       130.   ANTHONY WRIGHT, required immediate medical care and treatment.

21  However, the Defendants Does 1 through 10, who were employed by Defendants

22  County and SBSD, failed to take reasonable action to summon immediate medical care

23  and treatment. Each individual defendant had knowledge of or reason to know about

24  ANTHONY WRIGHT 's need for immediate medical care and treatment, yet they

25  failed to take reasonable action to summon such care and treatment. This conduct of

26  the defendants is in violation of California Government Code § 845.6.

27

28

131.    Defendants COUNTY and SCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

132.    As a direct and proximate result of the aforementioned acts of these Defendants, ANTHONY WRIGHT was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court enter a judgment as follows:

A.    General Damages in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

B.    Non-Economic Damages in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

C.    Special damages including damages for medical bills;

D.    Punitive damages as to individual peace officer defendants;

E.    Attorney's fees pursuant to State Law (CCP § 1021.5 & private attorney general doctrine);

F.    Penalties under the Bane Act;

G.    A multiplier of damages including treble damages pursuant to Civil Section 52;

H.    Interest;

I.    All other remedies awarded by the Court;

J.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; and as otherwise may be allowed by California and/or federal law.

**COMPLAINT FOR DAMAGES**

Dated: April 15, 2025          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                               **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorney for Plaintiffs,
ANTHONY WRIGHT, *et al.*

## **DEMAND FOR JURY TRIAL**

Plaintiffs, ANTHONY WRIGHT, individually and as personal representation of L.W., a minor, H.W., a minor, and A.G., a minor, and NICOYA WRIGHT, hereby make a demand for a jury trial on all claims for relief in this action.

Dated: April 15, 2025          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                               **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorney for Plaintiffs, ANTHONY WRIGHT, *et al.*

**COMPLAINT FOR DAMAGES**